# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL TODD BOOHER, ) | |
| ) | Civil Action No. 14 – 823 |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| TREVOR WINGARD and THE ) | |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |

## **MEMORANDUM OPINION**

Before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner Michael Todd Booher ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner challenges his judgment of sentence of an aggregate ten to twenty years of imprisonment, with a consecutive twenty years of probation, entered on October 10, 2008, in the Court of Common Pleas of Armstrong County, Criminal Division, docketed at Criminal Case Number CP-03-CR-0000485-2007, following his guilty plea of 23 counts of Felony-1 Burglary, 18 P.S. § 3502(c)(1). For the following reasons, Petitioner's application for federal habeas corpus relief will be denied.

### A. **Background**

The pertinent facts and procedural history were summarized by the Pennsylvania Superior Court on direct appeal in its Memorandum dated April 6, 2011.

[Petitioner] was charged with roughly eighty counts of burglary, theft, receiving stolen property, criminal mischief, and conspiracy. At the time of the preliminary hearing and the formal arraignment, the latter taking place on July 11, 2007, [Petitioner] was represented by court appointed counsel, [Attorney James Andring].

On October 10 or 11, 2007, [Attorney Andring] withdrew and a second lawyer, [Attorney Joseph Caruso], was appointed by the court.

On December 7, 2007, still represented by [Attorney Caruso], [Petitioner] pled guilty to twenty-three counts of burglary. The pleas were entered pursuant to an agreement wherein the Commonwealth *nolle prossed* the remaining charges and made no recommendation as to sentencing.

On or about January 31, 2008, prior to being sentenced, [Petitioner] filed a motion asking permission to withdraw his guilty pleas and to file a pretrial suppression motion *nunc pro tunc*.

On February 25, 2008, [Attorney Caruso] was granted leave to withdraw. [Attorney Swank] . . . then undertook to represent [Petitioner].

On or about February 27, 2008, the court ordered [Petitioner]'s guilty pleas withdrawn. However, the court declined to rule on [[Petitioner's] request for reinstatement of his pretrial motion rights, indicating that it (the court) would rule on such a request if and when [Petitioner] filed a pretrial motion.

On or about March 6, 2008, [Petitioner] filed a motion to suppress evidence, including certain statements he had made to the police. The Commonwealth contended the motion was untimely.

On April 8, 2008, the court held a hearing regarding the timeliness of [Petitioner]'s suppression motion. At that hearing, [Attorney Caruso's] testimony included the following. Roughly one week after he had been appointed on October 10 or 11, 2007, and after having read the discovery materials, he met with [Petitioner] and discussed the possibility of filing a pretrial motion to suppress the statements [Petitioner] had made to the police. [Attorney Caruso] and [Petitioner] discussed the possibility that they could seek suppression based on the police having made promises or having offered some type of inducements in return for [Petitioner]'s statements. [Attorney Caruso] advised [Petitioner] that the success of such a motion would turn on the suppression court's evaluation of whether the police illegally induced [Petitioner] to give the statements in question. [Attorney Caruso] also explained to [Petitioner] that such an evaluation by the court would involve credibility determinations. Furthermore, [Attorney Caruso] told [Petitioner] that, in counsel's view, filing a pretrial motion would complicate

2

his efforts to negotiate a plea agreement with the Commonwealth and, perhaps, undermine his effort to convince the court, upon entry of a guilty plea, that [Petitioner] had been cooperative with police. Additionally, [Attorney Caruso] testified that [Petitioner] directed him to try to negotiate some plea agreement with the Commonwealth. [Attorney Caruso] also testified that [Petitioner] did not request the filing of any pretrial motion.

During the hearing on April 8, 2008, [Petitioner] admitted that, on July 11, 2007, during his formal arraignment, the court advised him of his right to file pretrial motions. [Petitioner] testified, however, that he did not know what the court meant when it so advised him. [Petitioner] also testified that [Attorney Andring] had not been present at the arraignment to explain [Petitioner]'s rights. [Petitioner] denied having ever been advised by [Attorney Andring] or [Attorney Caruso] regarding the right to file pretrial motions.

Also during the April 8th hearing, [Petitioner] acknowledged that, prior to or at the December 7, 2007, plea hearing, he had signed a written plea colloquy indicating that he understood he was giving up his right to pursue a suppression motion.

After the April 8th hearing, the court took the matter under advisement and eventually denied [Petitioner]'s request to file a pretrial motion *nunc pro tunc*. [Subsequently, the trial court denied [Petitioner]'s motion for reconsideration.] In its opinions [supporting these rulings], the court explained that it found [Petitioner]'s testimony lacking in credibility and that it (the court) accepted [Attorney Caruso's] testimony as true. The court also noted it had advised [Petitioner], at the formal arraignment, that he could file a pretrial motion. Additionally, the court observed that, in [Petitioner]'s written guilty plea colloquy of December 7, 2007, he indicated he was giving up his right to file pretrial motions, including a suppression motion. In light of these facts, the court rejected [Petitioner]'s claim that he did not know and/or did not have an opportunity to file a pretrial motion earlier than when he chose to do so.

On October 6, 2008, [Petitioner] pled guilty pursuant to a plea agreement that was essentially the same as the one entered in December 2007. That is, [Petitioner] pled guilty to twenty-three counts of burglary and the Commonwealth *nolle prossed* the remaining charges while making no sentencing recommendation.

[Petitioner] later filed a timely [PCRA] petition[.]. [Attorney Swank] continued to represent [Petitioner] and eventually filed an amended petition. While it appears the court scheduled a hearing on the PCRA request, the record does not indicate that any hearing involving testimony took place. Additionally, there is no transcript from any PCRA hearing in the record. In any event,

3

> however, the PCRA court granted [Petitioner] the right to file a direct appeal *nunc pro tunc*. [Petitioner] then filed this direct appeal.
>
> Herein, [Petitioner] contends his prior lawyers [Attorney Andring and Attorney Caruso], were ineffective in various ways. He complains about [Attorney Andring's] performance at the preliminary hearing, his lack of appearance at formal arraignment, his alleged failure to advise [Petitioner] about the right to file a motion to suppress [Petitioner]'s statements, and/or [Attorney Andring's] failure to file such a motion. [Petitioner] also complains about [Attorney Caruso's] alleged failure to advise [Petitioner] about his pretrial suppression rights and/or [Attorney Caruso's] failure to advise [Petitioner] about his pretrial suppression motion.

Commonwealth v. Booher, 29 A.2d 825 (Pa. Super. 2011) (unpublished memorandum at 1-5) (footnote omitted). The Superior Court affirmed Petitioner's judgment of sentence on April 6, 2011. (SCR No. 100.)[1]

Petitioner filed a timely PCRA petition on July 6, 2011, (SCR No. 102), and a hearing on the petition took place on November 22, 2011. Thereafter, the trial court issued an opinion denying the PCRA petition on January 19, 2012. (SCR No. 108.) Petitioner appealed, but the Superior Court affirmed the denial of relief on March 11, 2013. (SCR.)[2]

Petitioner filed a *pro se* Petition for Allowance of Appeal ("PAA") *nunc pro tunc* with the Pennsylvania Supreme Court on May 1, 2013. Commonwealth v. Booher, 31 WM 2013 (Pa). The Pennsylvania Supreme Court granted him leave to file *nunc pro tunc* on November 20, 2013, id, and Petitioner filed a PAA on December 20, 2013, Commonwealth v. Booher, 606 WAL 2013 (Pa.). The PAA was ultimately denied on May 15, 2014. Id.

Petitioner filed the instant Petition for Writ of Habeas Corpus on June 23, 2014. (ECF No. 1.) The Petition raises three claims, summarized as follows:

---

[1] Respondents have provided a hard copy of the state court records and have indexed each document therein. They will be referred to herein as "SCR" (state court record) No. x.

[2] This document is included within the state court record but not indexed.

1. Ineffective assistance of counsel for failing to attend the preliminary hearing and formal arraignment.

2. Ineffective assistance for failing to file a motion to suppress.

3. Trial court error in denying motion to file omnibus pretrial motions *nunc pro tunc*.

Respondents filed their Answer to the Petition on August 8, 2014. (ECF No. 5.)

B. **Standard of Review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to,[3] or involved an unreasonable application of,[4] clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[3] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (1995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[4] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v.

5

> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.[5]

(Emphasis added). Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), under 28 U.S.C. § 2254(e)(1) a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by "clear and convincing evidence." *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

---

Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[5] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

## C. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . . In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696.

### D. Discussion

#### 1. Ineffective assistance of counsel for failing to attend the preliminary hearing and formal arraignment.

In Petitioner's first claim he argues that he was denied effective assistance of counsel because Attorney Andring did not attend the preliminary hearing or formal arraignment. Petitioner raised this claim in his PCRA petition, and on appeal the Superior Court addressed it as follows:

> Appellant provides no specific argument to support his claim that Attorney Andring was ineffective for failing to attend his preliminary hearing and his formal arraignment. Additionally, Appellant has failed to show he was in anyway prejudiced by Attorney Andring's failure to attend his preliminary hearing and formal arraignment. Thus, we will not consider these claims further. ***See generally, Commonwealth v. Pettus***, 424 A.2d 1332 (Pa. 1981) (explaining that claims of ineffectiveness are not self-proving and therefore cannot be raised in a vacuum).

(SCR); Commonwealth v. Booher, 255 WDA 2012 (Pa. Super. Mar. 11, 2013.)

Because the state court rejected Petitioner's ineffective assistance of counsel claim on the merits, this Court must review it under AEDPA's standard of review, which is set forth at 28 U.S.C. § 2254 and in section B, *supra*.

Under AEDPA, review is to proceed as follows.

> . . . . "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo,* 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.* (quoting *Matteo,* 171 F.3d at 888). "If we determine that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Id.* (citing *Matteo,* 171 F.3d at 888). In performing this inquiry, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889).

> Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v. Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts v. Vaughn, 228 F.3d 178, 196-97 (2000)).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland, *supra*, and the state court applied this standard to Petitioner's ineffectiveness claim.[6] With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to his ineffectiveness claim, and therefore, the state courts' adjudication of this claim was not "contrary to" Strickland. *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dipositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable application" of Strickland. It was not. In order to overcome AEDPA's standard of review, Petitioner must show that the state

---

[6] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the difference merely reflects a stylistic choice on the part of state courts. *See* Werts, 228 F.3d at 202–03.

courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Matteo, 171 F.3d at 890, and, he falls far short of meeting this burden.

Petitioner argues that Attorney Andring was one and one-half hours late in appearing for his preliminary hearing thereby denying him "any opportunity to cross-examine the police on the central issue of the case, namely alleged confessions made by [Petitioner] whereby he implicated himself in connection with unsolved burglaries." (ECF No. 2 at p.10.) Upon the advice of Attorney Andring, Petitioner waived his preliminary hearing.

Petitioner further argues that counsel's failure to appear at his formal arraignment denied him the opportunity to "understand[] the time limits within which he would have to file an Omnibus Pre-Trial Motion to suppress his alleged confessions." (ECF No. 2 at p.10.)

Petitioner admits that he was advised by the court of his right to file a pre-trial motion but without the benefit of counsel he did not understand what a pre-trial motion was and neither of his attorneys explained to him his rights regarding a pretrial motion nor asked him any questions regarding the circumstances surrounding his alleged confessions. (ECF No. 2 at p.11, 12.)

Here, the state court found that Petitioner had not established that he was prejudiced by Attorney Andring's failure to attend his preliminary hearing and formal arraignment and this Court finds that this was a reasonable application of Strickland. Despite Petitioner's arguments to the contrary, whereby he attempts to establish prejudice, the fact remains that Petitioner was advised by the trial court of his right to file pre-trial motions. While he might not have understood exactly what all that entailed, it was not an unreasonable determination by the state court to find that Petitioner had failed to establish the prejudice necessary to show ineffectiveness on the part of Attorney Andring because, as discussed in the next section, he did not show that the result of the proceeding would have been different, *i.e.*, that he would have

been successful in a pre-trial motion to suppress had the trial court not denied his request. As such, Petitioner has not met his burden under 28 U.S.C. 2254(d) by showing that the state court's disposition of this claim was an objectively unreasonable application of Strickland. Furthermore, the state court's decision was not an unreasonable determination of the facts in light of the evidence presented. Relief will therefore be denied.

### 2. **Ineffective assistance of counsel for failing to file a motion to suppress.**

Petitioner's next claim is that both Attorney Andring and Attorney Caruso were ineffective in failing to file a timely pretrial motion to suppress. Petitioner raised this claim in his PCRA petition and after conducting an evidentiary hearing the trial court addressed it in its January 19, 2012 Memorandum Opinion as follows:

> It is Defendant's contention that his first and second attorneys were ineffective for failing to file suppression motions on behalf of Defendant. [FN6]
>
> [FN6] Omitted
>
> * * * *
>
> . . . the Defendant must first show that his incriminating statements to police were involuntary. It is undisputed that Defendant was not read his Miranda rights before he made incriminating statements to police. However, it is not at all clear that Defendant was ever in custody during his interactions with the police. Defendant presented no detailed testimony regarding the circumstances of Defendant's being taken to the state police barracks or what ensued thereafter. Defendant has failed to adequately develop this issue. He merely relies on his assertion that he was never read his Miranda rights and some suggestion that he and Trooper Fennell at one time during their days of being together doing ride-arounds, discussed Defendant being a heroin addict and dope sick. That is not sufficient to meet Defendant's burden of showing that a pretrial motion to suppress Defendant's incriminating statements would have had arguable merit.
>
> Next, Defendant has the burden of showing that his attorneys' failure to file a motion to suppress had no reasonable basis designed to effectuate Defendant's interest.

11

Defendant's first attorney, Andring, did not expressly testify about his reasons for not filing a pretrial motion. However, he indicated that his and Defendant's focus was on getting help for Defendant's addiction and obtaining some kind of guilty plea. 4/8/09 N.O.T. at 28-32. When it became obvious that the District Attorney was unwilling to commit to a specific sentence, Defendant "then began requesting to just simply enter the plea, a straight plea on these cases." Id. at 28. Andring's actions to seek a plea bargain had a reasonable basis designed to effectuate Defendant's interest, as it made sense to plea bargain given the sheer number of charges Defendant was facing.

In any event, Andring's actions are irrelevant because this Court would have gladly granted Defendant's second attorney, Caruso, the opportunity to file an untimely pretrial motion without question **prior** to the time Defendant entered his first guilty plea. However, Caruso did not attempt to file a pretrial motion to suppress during that time.

This was not ineffective assistance of counsel. To the contrary, Caruso had an eminently reasonable basis for not filing a pretrial motion to suppress: he had chosen to pursue a strategy of demonstrating to the District Attorney and the Court that Defendant was totally cooperating with the authorities and should consequently receive a lighter sentence. Also, as Caruso pointed out, if Defendant was successful in a pretrial suppression motion and went to trial, he would not be in a position to contradict his prior statements without those prior statements coming in as evidence. In fact, Caruso obtained a guilty plea arrangement whereby 62 of the charges against Defendant were *nolle prossed*. This deal was clearly advantageous to Defendant.

Caruso testified that during his various meetings with Defendant, he and Defendant specifically discussed the possibility of filing a motion to suppress Defendant's incriminating statements. Caruso said he explained to Defendant how such a motion was heard and decided why he thought it was not in Defendant's best interest to file one. Caruso said Defendant accepted Caruso's recommendation not to file a motion to suppress and asked him to continue to pursue a guilty plea arrangement. Caruso testified that "it had been [defendant's] representation to me all along that he intended to plead guilty . . . ." 4/8/08 N.O.T. at 38. Caruso said Defendant never asked him to file a pretrial motion [until after he pled guilty]. Id. at 36-37.

As Defendant himself admitted, "[e]very time I would ask to get a suppression motion, I would be led to believe that my best bet was just to cooperate instead of getting the statements suppressed." 11/22/11 N.O.T. at 39. It was Defendant's decision to forgo a suppression motion and plead guilty, not Caruso's. The first time that Defendant instructed Caruso to file a suppression motion was by letter after Defendant's first guilty plea. Caruso did what he was instructed to do, withdrew Defendant's guilty plea, and moved to be allowed to

12

file a suppression motion. Caruso's actions pursuant to Defendant's instructions tend to belie any notion that Caruso had refused to follow Defendant's prior instructions.

The Court finds Caruso to be believable and accepts his testimony as true. In the Court's experience, Caruso is an extremely competent criminal defense attorney who has never been reluctant to file a pretrial motion when he felt it would help his client. Defendant and Caruso discussed possible grounds for a motion to suppress evidence, but decided not to file one after considering the Defendant's circumstances as a whole. Given that Defendant was facing a total of 85 criminal counts, and further, that the police had substantial evidence, not based upon Defendant's admissions, of Defendant having committed numerous burglaries and other crimes, Caruso's strategy was reasonably tailored to obtain the best result for his client.

Finally, Defendant has the burden of showing that he was prejudiced by counsel's ineffective assistance . . . .

In this case, Defendant testified that he was convinced by Caruso that it was his best option to continue to cooperate by pleading guilty so that he could make a deal with the District Attorney. Caruso testified that "it had been [defendant's] representation to me all along that he intended to plead guilty . . . ." 4/8/08 N.O.T. at 38. Caruso said Defendant never asked him to file a pretrial motion [until after he pled guilty]. Id. at 36-37. The Court finds that Defendant has failed to prove that he was prejudiced by pleading guilty to 23 counts of burglary. [FN7]

> [FN7] In fact, although defendant faced a maximum of 460 years in prison for the 23 burglary counts, he was only sentenced to 10 to 20 years.

(ECF No. 5-2 at pp.42-49.) On appeal, the Superior Court noted that:

As a matter of credibility, the PCRA court believed Attorney Caruso's version of the contested facts. We cannot disturb this determination. ***See Commonwealth v. Harmon***, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Our review of the record supports the PCRA court's conclusion that [Petitioner] knowingly chose to forgo the filing of a suppression motion and that Attorney Caruso's recommendations were reasonable. ***Johnson, supra***. Thus, [Petitioner]'s ineffectiveness claims fails.

(SCR); Commonwealth v. Booher, 255 WDA 2012 (Pa. Super. Mar. 11, 2013.)

Like in his first claim, the state court applied the Strickland standard to this claim of ineffective assistance, and Petitioner has not demonstrated that Strickland "requires the contrary outcome." Therefore, the state courts' adjudication of this claim was not "contrary to" Strickland. *See* Werts, *supra*.

Neither was the state courts' adjudication of this claim an "unreasonable application" of Strickland. As to the merit of a pretrial motion to suppress, Petitioner argues that he would have shown, among other things, (a) that he had initially been illegally arrested by the Pennsylvania State Police on Route 28 in Allegheny County for a traffic violation as a pretext to illegally detain and interrogate him about burglaries wholly unrelated to his initial arrest; (b) that after his initial arrest in Allegheny County for the traffic violation, he was immediately transported against his will by the Pennsylvania State Police back to their barracks in Kittanning, PA , (2011 N.T. at p. 8-10); (c) that he was in the custody of and interrogated by the police immediately after his initial arrest and during several lengthy "ride-arounds" to burglary locations in a police car over the course of several days, (2011 N.T. at p.12); (d) that he reasonably believed that he was at all times under arrest by the police and that he was never free to leave or to refuse to cooperate; (e) that during these lengthy custodial interrogations, Defendant was either high on heroin or drug-sick from the lack of heroin which conditions the police were aware of, (2011 N.T. at p.13); and (f) that during all of this lengthy period of custodial interrogation the police never informed Defendant of his Miranda Rights and that Defendant never signed a Miranda waiver form. (2011 N.T. at p.11); (ECF No. 2 at p.16.) These, however, are all issues that the trial court considered before it found that Petitioner had not demonstrated that his incriminating statements were involuntary. Furthermore, the trial court pointed out that if Petitioner was successful in a pretrial motion to suppress, he would not be in a position to contradict his prior

statements without those prior statements coming in as evidence.  Given the penalty for the sheer number of charges Petitioner was facing, it was clearly in his best interest to cooperate with the District Attorney and pursue a plea bargain.

Additionally, despite Petitioner's argument that a motion to suppress was really the only tenable defense available to him and therefore Attorney Caruso could not have had any reasonable basis for not filing it, (ECF No. 2 at p.19, 20), the trial court noted that it was Petitioner's desire all along to plead guilty and he never indicated that he wanted to file a motion to suppress until after he plead guilty.

This Court need not expand any further upon the state court's well-reasoned analysis of this claim.  It's adjudication of this claim was neither an unreasonable application of Strickland nor an unreasonable determination of the facts.  Petitioner has failed to meet his burden under both 28 U.S.C. § 2254(d)(1)-(2).  Therefore, relief will be denied as to this claim.

### 3. **Trial court error in denying motion to file omnibus pretrial motions *nunc pro tunc*.**

Petitioner's final claim is that the trial court erred in denying his motion to suppress *nunc pro tunc*. (ECF No. 2 at p.13.)  On September 19, 2008, Petitioner filed a motion for reconsideration whereby he requested that the trial court reconsider its Order and Memorandum dated May 8, 2008, arguing, among other things, that the court relied upon facts not of record in support of its decision denying Petitioner's pretrial motion *nunc pro tunc*.  By way of an Order and Memorandum dated September 24, 2008, the trial court denied this motion for reconsideration finding that the facts upon which the court based its decision were of record. (SCR 43.)

The law regarding a defendant's request to file a pretrial motion to suppress *nunc pro tunc* involves an issue of state-law. *See* Commonwealth v. Long, 753 A.2d 272, 279 (Pa. Super. 2000), quoting Commonwealth v. Cooke, 394 A.2d 1271, 1274 (Pa. Super. 1978). However, federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). For this reason, this claim is not subject to review.

### E. **Certificate of Appealability**

A court should issue a Certificate of Appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find it debatable whether Petitioner states a valid claim of the denial of a constitutional right, and jurists of reason would not find debatable the issue of whether this Court were correct in concluding that the Petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a Certificate of Appealability. A separate Order will issue.

Dated: June 3, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL TODD BOOHER, ) | |
| ) | Civil Action No. 14 – 823 |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| TREVOR WINGARD and THE ) | |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |

## ORDER

**AND NOW**, this 3rd day of June, 2016, and in accordance with the Court's Memorandum Opinion,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 1) is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case closed.

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Petitioner wishes to appeal from this Order a notice of appeal, as provided in Fed. R. App. P. 3, must be filed with the Clerk of Court, United States District Court, at 700 Grant Street, Room 3110, Pittsburgh, PA 15219, within thirty (30) days.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: **MICHAEL TODD BOOHER**
HU 2212
SCI Laurel Highlands
CO 23-1
P.O. Box 631
5706 Glades Pike
Somerset, PA 15501-0631

Counsel of record
Via CM/ECF electronic mail